FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARIA G.,

                Plaintiff,

   v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                Defendant.

NO: 1:19-CV-3044-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 8 and 10. This matter was submitted for consideration without oral

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

argument. The Plaintiff is represented by Attorney D. James Tree. The Defendant is represented by Special Assistant United States Attorney Leisa A. Wolf. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 8, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 10.

## JURISDICTION

Plaintiff Maria G.[2] filed for supplemental security income and disability insurance benefits on June 19, 2014, alleging an onset date of November 1, 2013. Tr. 323-24, 327-32. Benefits were denied initially, Tr. 173-79, and upon reconsideration, Tr. 192-203. A hearing before an administrative law judge ("ALJ") was conducted on February 1, 2017, and a subsequent hearing was conducted on January 10, 2018. Tr. 38-84, 782-90. Plaintiff was represented by counsel and testified at both hearings. *Id*. The ALJ denied benefits, Tr. 12-34, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

/ / /

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 51 years old at the time of the second hearing. Tr. 40. She has received her GED. Tr. 40. Plaintiff testified that she lives with her mom, dad, and two children. Tr. 63. Plaintiff has work history as a harvest worker, truck driver, landscaper, and laborer. Tr. 54-55, 73. Plaintiff testified that she could not work as a fruit sorter because her knee, foot, and arms hurt, and she "can't use [her] arms like they want." Tr. 58.

Plaintiff reported that it is hard for her to use her hands, and she has pain in her arms, knees, and down her back. Tr. 56. On "bad days" she spends most of the day in bed, and she might be sick for a whole month. Tr. 60-61. She testified that she can wash three plates and two cups before she has to rest for ten minutes. Tr. 58-59. Plaintiff reported that she can sleep for two to three hours at a time because she "get[s] anxiety." Tr. 59, 61-62.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 1, 2013, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, affective disorders, somatoform disorders, anxiety, and obesity. Tr. 17. At step

three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently balance. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She is capable of understanding and remembering short, simple instructions consistent with unskilled work. She is able to sustain attention and concentration for short, simple instructions and work-like procedures. She can have frequent changes to the work environment with at least 1-day notice of material changes (time, place, etc.). She is capable of setting realistic, work-related goals. She may be off task about 10 percent over the course of an 8-hour workday. She can frequently handle and finger bilaterally.

Tr. 19. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a harvest worker, fruit and laborer, and landscaper. Tr. 25. In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: cleaner, housekeeping; bakery worker, conveyer line; and bindery machine feeder. Tr. 26. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 1, 2013, through the date of the decision. Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and

supplemental security income benefits under Title XVI of the Social Security Act.

ECF No. 8. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered the medical opinion evidence; and

2. Whether the ALJ properly considered Plaintiff's symptom claims.

## DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory

and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the opinions of examining physician William Drenguis, M.D., examining physician Mary Pellicer, M.D., and examining psychologist Roland Dougherty, Ph.D. ECF No. 8 at 4-16.

### 1. Dr. William Drenguis

In December 2013, Dr. Drenguis examined Plaintiff and opined that she was limited to standing and walking four hours in an eight-hour workday with normal breaks; sitting for five hours in an eight-hour workday with normal breaks; lifting and carrying twenty pounds occasionally and ten pounds frequently; occasionally climbing, stooping, kneeling, crouching, and crawling; frequently reaching; and occasionally handling, fingering and feeling. Tr. 570-71. The ALJ gave "some weight" to Dr. Drenguis' finding regarding Plaintiff's ability to stand, walk, and sit. However, the ALJ gave "great weight" to "the portion of Dr. Drenguis' opinion limiting [Plaintiff] to frequent handling and fingering as this is consistent with his exam findings showing some limited range of motion in her fingers and wrists."[3]

_____

[3] The ALJ also found that while Dr. Drenguis limited Plaintiff to "frequent reaching, his own examination showed normal cervical and shoulder range of motion and does not support this finding." Tr. 24. Accordingly, the ALJ did not include any limitations on reaching in the assessed RFC. *See* Tr. 24. The Court declines to

Tr. 23-24.  Plaintiff argues the ALJ failed to properly evaluate Dr. Drenguis'

examining medical opinion for several reasons.

First, Plaintiff notes that the ALJ "misapprehended the examining physician's

conclusion regarding [Plaintiff's] manipulative limitations."  ECF No. 8 at 6.

Specifically, the ALJ gave "great weight" to the portion of Dr. Drenguis' opinion

limiting Plaintiff to "frequent handling and fingering," and incorporated this

limitation into the assessed RFC.  Tr. 19, 23-24.  However, as noted by Plaintiff,

"Dr. Drenguis' functional assessment clearly states that, due to bilateral hand

arthritis, [Plaintiff] can only '*occasionally* handle, finger, and feel.'" ECF No. 8 at 6

(emphasis in original); Tr. 571.  Thus, "[e]ither the ALJ intended to afford 'great

weight' to Dr. Drenguis' limitation to occasional manipulative activities, in which

case the ALJ's RFC assessment is inaccurate, or the ALJ misread the examining

physician's medical source statement and, thus, has not evaluated the limitation

found by Dr. Drenguis.  In any event, this error compels reversal of the ALJ's

disability determination."  ECF No. 8 at 6.  The Court agrees.  The ALJ erred by

---

address this issue because it was not identified with specificity in Plaintiff's opening

brief.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

2008).  However, in light of the need to remand the case for reconsideration of Dr.

Drenguis' opinion, as discussed herein, the ALJ should reevaluate Dr. Drenguis'

assessed reaching limitation on remand.

failing to either provide the requisite reasons to reject the manipulative limitations assessed by Dr. Drenguis, or incorporate them into Plaintiff's RFC. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to address medical opinion was reversible error); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations").

Moreover, the record, as it stands, does not permit the Court to conclude that the error harmless. *See Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."). Because the hypothetical RFC posed to the vocational expert did not reflect all of plaintiff's limitations, the expert's testimony has no evidentiary value to support the ALJ's step five finding that plaintiff can perform jobs in the national economy. *Robbins*, 466 F.3d at 886. Accordingly, the ALJ's step five determination is unsupported by substantial evidence. Because the ALJ erred by failing to either reject or properly incorporate Dr. Drenguis' opined manipulative limitations into plaintiff's RFC, the opinion must be reconsidered on remand, along with the subsequent steps of the sequential analysis.

Second, Plaintiff argues the ALJ improperly rejected Dr. Drenguis' assessment that Plaintiff was limited to standing and walking for four hours in an eight-hour workday, and sitting for five hours in an eight-hour workday, due to arthritis in her knees and lumbar spine. ECF No. 8 at 7; Tr. 570. The ALJ generally gave "some weight" to this portion of Dr. Drenguis' opinion because "the records do

not support these limitations." Tr. 23.  In support of this finding, the ALJ noted that (1) "Dr. Drenguis did not review any imaging results and had minimal records to review prior to his evaluation," and (2) "[w]hile [Plaintiff] had some limited range of motion in her back and hands, the remainder of the exam findings were largely normal."[4]  Tr. 23.

The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion.  *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may properly reject a medical opinion if it is inconsistent with the provider's own

---

[4] The ALJ also noted that Plaintiff "herself reported significant relief of her symptoms with medication, and at the time of Dr. Drenguis' evaluation, she stated that she had not taken medication for 2 weeks indicating that her symptoms were likely not as severe as she is now alleging."  Tr. 23.  As noted by Defendant, "a treatment's effectiveness is relevant to determining the severity of [Plaintiff's] symptoms."  ECF No. 10 at 17 (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)).  However, while improvement with treatment is a relevant consideration in evaluating Plaintiff's symptom claims, the Court is unable to discern how Plaintiff's report to Dr. Drenguis that she did not take medication for two weeks prior to the examination is a specific and legitimate reason, supported by substantial evidence, for the ALJ to discount the medical opinion evidence.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

treatment notes). However, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*.

Here, the ALJ generally noted, without citation to the record, that aside from "some limited range of motion in her back and hands, the remainder of the exam findings were largely normal." Tr. 23. As an initial matter, due to the lack of any citation to the record, the Court is unclear whether the ALJ is purporting to reject Dr. Drenguis' opinion based on his own "largely normal" examination findings, or based on examination findings throughout the longitudinal record, which the ALJ generally contends were not reviewed by Dr. Drenguis. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.")). Moreover, while not acknowledged by the ALJ, the Court notes that, in addition to limited range of motion in Plaintiff's back and hands, Dr. Drenguis found Plaintiff had limited range of motion in her wrists and fingers; tenderness in her lumbar spine; and tenderness, crepitus, and passive range of motion in her right knee. Tr. 569-70. Dr. Drenguis also observed that Plaintiff's

gait was "slow and mildly antalgic with [Plaintiff] favoring her right leg," and she experienced knee pain when she did toe to heel walking, hopping, and squatting. Tr. 568.

Based on the foregoing, the Court finds the ALJ failed to properly summarize and interpret the entirety of Dr. Drenguis' clinical findings; nor did the ALJ cite any records from the overall record in support of his finding. Tr. 23. Thus, the ALJ's conclusory rejection of Dr. Drenguis' opinion because it is unsupported by "largely normal" examination findings, without the requisite interpretations of the "facts and conflicting clinical evidence," is not supported by substantial evidence. This was not a specific and legitimate reason for the ALJ to reject this portion of Dr. Drenguis' opinion.

The Court finds the ALJ did not properly consider Dr. Drenguis' opinion, and it must be reconsidered on remand.

### 2. Mary Pellicer, M.D.

In October 2014, Dr. Pellicer examined Plaintiff and opined that she could stand and walk two to four hours in an eight-hour workday with more frequent breaks due to fibromyalgia; sit for six hours in an eight-hour workday with more frequent breaks due to fibromyalgia; lift and carry less than ten pounds occasionally; never bend, squat, crawl, kneel or climb; and manipulate occasionally. Tr. 588. The ALJ gave "little weight" to Dr. Pellicer's opinion because

> the CDIU investigation found [Plaintiff] was able to drive long distances and engage in more activities than she reported to Dr. Pellicer.

> Dr. Pellicer's opinion appears to be largely based on [Plaintiff's] self-reporting, which is not supported by the longitudinal history of treatment records showing minimal treatment for her pain complaints and reported improvement with medication alone.

Tr. 24.

First, an ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti*, 533 F.3d at 1041. The only evidence cited by the ALJ in support of this finding was a general notation that Dr. Pellicer "did not review significant records prior to rendering her opinion." Tr. 24. However, the record indicates that Dr. Pellicer did review the August 2014 SSA Function Report, as well as medical records from 2013. Tr. 584. Moreover, the ALJ entirely failed to consider Dr. Pellicer's physical examination findings, which included findings that Plaintiff needed assistance to get on and off the exam table, could not make a closed fist with either hand, complained of pain in muscles and joints, had "slow and clumsy" finger to nose bilaterally, could not do heel to shin, could not pick up coins from a flat surface with either hand, had slow gait, could not walk on heels, toes or in tandem, and could not bend or squat. Tr. 586-88. Moreover, the ALJ did not consider Dr. Pellicer's findings that Plaintiff had decreased range of motion in her back, neck, knee, shoulder, elbow, ankle, and wrist, and the ALJ failed to consider mental status examination findings that Plaintiff's mood was depressed, her affect was flat, and she remembered only one out of three words after five minutes. Tr. 585-87. Neither

the ALJ, nor the Defendant, offers any evidence that Dr. Pellicer relied "to a large extent" on Plaintiff's subjective complaints as opposed to these extensive clinical findings. Based on the foregoing, the ALJ's rejection of Dr. Pellicer's opinion because "it appears to be based largely on" Plaintiff's self-report was not a specific and legitimate reason, supported by substantial evidence.

Second, the ALJ generally notes that Dr. Pellicer's opinion is not supported "by the longitudinal history of the treatment records showing minimal treatment for her pain complaints and reported improvement with medication alone." Tr. 24. The ALJ also cited the CDIU investigation report that found Plaintiff "was able to drive long distances and engage in more activities than she reported to Dr. Pellicer." Tr. 24. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *See Orn*, 495 F.3d at 631; *see also Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (an ALJ may discount an opinion that is inconsistent with a claimant's reported functioning). However, as noted above, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*.

Here, the ALJ fails to cite any "facts and conflicting clinical evidence" from the record in support of these findings, nor does the ALJ offer any explanation of why his interpretation of the longitudinal treatment record and Plaintiff's activities as reported in the CDIU investigation records is correct, as opposed to the findings of examining physician, Dr. Pellicer. Thus, the ALJ's rejection of Dr. Pellicer's opinion as unsupported by the longitudinal treatment records and Plaintiff's activities, without the requisite interpretations of the evidence, is not supported by substantial evidence. This was not a specific and legitimate reason for the ALJ to reject Dr. Pellicer's opinion.

For all of these reasons, the ALJ did not properly consider Dr. Pellicer's opinion and it must be reconsidered on remand.

### 3. Dr. Roland Dougherty

In October 2014, psychologist Dr. Dougherty examined Plaintiff and opined that she has the ability to perform simple and repetitive tasks, may need repetition of directions, and may be able to do some detailed and complex tasks. Tr. 591-96. Dr. Dougherty also found that Plaintiff would be able to accept instructions from supervisors, but may have difficulty carrying out instructions, and is likely to have difficulty interacting with coworkers and the public due to her "significant depression and anxiety." Tr. 596. Finally, Dr. Dougherty opined that Plaintiff's "disorders are likely to make it difficult for her to maintain regular attendance in the workplace. She is not likely to be able to complete a normal workday/workweek

without interruptions from her serious psychological syndromes. The same difficulties are likely to make it difficult for her to deal with the stress encountered in the workplace." Tr. 596. The ALJ gave great weight to the portion of Dr. Dougherty's opinion that Plaintiff can do simple and repetitive tasks, and possibly some detailed and complex tasks, "as that accommodates for the limitations shown on his consultative evaluation and is consistent with [Plaintiff's] subjective complaints." Tr. 24. However, the ALJ gave less weight to two portions of Dr. Dougherty's opinion. Tr. 24.

First, without citation to the record, the ALJ gave "less weight" Dr. Dougherty's opinion that Plaintiff had "some social limitations, as Dr. Dougherty noted that [Plaintiff] was pleasant and cooperative and had fair social skills. The physical records document no notable social problems and consistently show [Plaintiff] to be pleasant and cooperative." Tr. 24. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *See Orn*, 495 F.3d at 631. As an initial matter, the Court notes that at no time in his decision does the ALJ identify the precise "social limitations" opined by Dr. Dougherty that he gives less weight; thus, the Court is left to presume the ALJ is referring to Dr. Dougherty's specific assessment that Plaintiff is "likely to have difficulty interacting with coworkers and the public due to her significant depression and anxiety." *See Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's

conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

As argued by Plaintiff, "the fact that [Plaintiff] is not rude or combative in a medical setting does not undermine Dr. Dougherty's conclusion that her 'significant depression and anxiety' would interfere with coworkers and the public in an employment setting." ECF No. 8 at 16. Moreover, similar to the opinions discussed above, the ALJ fails to cite any specific evidence from the record to support his finding that the record "documents no notable social problems," nor does the ALJ offer any explanation of why his interpretation of Plaintiff's "social limitations" is correct, as opposed to the findings of examining physician, Dr. Dougherty. *Reddick*, 157 F.3d at 725. For all of these reasons, the ALJ's rejection of the portion of Dr. Dougherty's opinion regarding "social limitations," is not supported by substantial evidence. This was not a specific and legitimate reason for the ALJ to reject Dr. Dougherty's opinion.

Second, the ALJ gave "little weight" to Dr. Dougherty's opinion that Plaintiff is not able to complete a normal workweek, because "al[t]hough Plaintiff performed poorly on Dr. Dougherty's evaluations, subsequent records do not show such significant limitations." Tr. 24. Again, the ALJ fails to cite any specific "subsequent records," nor does he explain how those "subsequent records" are inconsistent with Plaintiff's performance on the mental status examination by Dr.

Dougherty, which the ALJ acknowledges Plaintiff "performed poorly on." Tr. 24.

Dr. Dougherty noted that Plaintiff was "mildly psychomotorically retarded," her

affect was congruent with her reported depressed mood, her responses were

tangential and slow to come, she sometimes forgot questions posed to her, her

remote memory was poor, she was able to recall only 1 of 3 objects after a five

minute period and only 2 numbers forward and backward on a digit span test, and

she could not remember more than one step of a three step task. Tr. 594. Moreover,

as noted by Plaintiff, and not considered by the ALJ, "subsequent records" from the

longitudinal record include findings of cognitive deficits, concentration difficulties,

depressed affect, memory difficulties, and "severe distress" from anxiety and

depression. ECF No. 8 at 14 (citing Tr. 601, 605, 607, 668). Based on the

foregoing, the Court finds the ALJ's rejection of Dr. Dougherty's assessment that

Plaintiff was likely not able to complete a normal workweek because it is not

consistent with "subsequent records," is not specific, legitimate, and supported by

substantial evidence.

     For all of these reasons, the ALJ did not properly consider Dr. Dougherty's

opinion and it must be reconsidered on remand.

**B. Additional Assignment of Error**

     Plaintiff also challenges the ALJ's consideration of Plaintiff's symptom

claims. ECF No. 8 at 16-20. The ALJ found that "[o]verall, the longitudinal history

of the treatment records fails to support [Plaintiff's] complaints of disabling

impairment." Tr. 23. Thus, because the analysis of Plaintiff's symptom claims is largely dependent on the ALJ's evaluation of the medical evidence, including the three examining provider opinions that the ALJ is instructed to reconsider on remand, the Court declines to address these challenges in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and conduct a new sequential analysis.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated,

remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a medical expert. In addition, the ALJ should reconsider Plaintiff's symptom claims, the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

/ / /

/ / /

**ACCORDINGLY, IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 8**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.  Defendant's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

3.  Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** March 11, 2020.

<u>     *s/ Rosanna Malouf Peterson*     </u><br>
ROSANNA MALOUF PETERSON<br>
United States District Judge